```
              UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN and THERESA CALANDRELLO,   :
                                :CIVIL ACTION NO. 3:13-CV-134
        Plaintiffs,             :
                                :(JUDGE RICHARD P. CONABOY)
        v.                      :
                                :
SENTINEL INSURANCE COMPANY      :
LIMITED, and JOHN DOES 1-10,    :
                                :
        Defendants.             :
                                :
```

## **MEMORANDUM**

Here we consider the Motion to Dismiss by Defendant Sentinel Insurance Company Ltd. (Doc. 12) filed on April 4, 2013. With this Motion, Defendant Sentinel Insurance Company Limited ("Defendant" for purposes of this Memorandum) seeks dismissal of all claims contained in Plaintiffs' First Amended Civil Action Complaint (Doc. 10). (Doc. 12 at 1-2.)

The Court having denied the Motion for Oral Argument of Defendant Sentinel Insurance Company Ltd. (Doc. 21) by Order of June 5, 2013 (Doc. 24), this matter is ripe for disposition. For the reasons discussed below, we conclude the Motion is properly granted in part and denied in part.

## **I. Background**

Plaintiffs John and Theresa Calandrello ("Plaintiffs") sustained damaged to their property in Pike County, Pennsylvania, as a result of Hurricane Irene, which struck the area of their residence on or about August 28, 2011. (Pl's Amended Compl. Doc.

10 at 1, ¶ 10.) At all material times, Plaintiffs were insured under a homeowners insurance policy ("Policy") issued by Defendant. (Doc. 10 ¶ 7.) The Policy covered damage to Plaintiffs' dwelling including structures attached to the dwelling. (Doc. 10 ¶ 8.) The Policy included coverage for wind and hail damage. (Doc. 10 ¶ 9.)

Plaintiffs were able to visit the insured property to check for damage on or about September 7, 2011. (Doc. 10 ¶ 11.) They observed damage to the roof and chimney as well as water infiltration into the house. (Doc. 10 ¶ 12.) Plaintiffs also observed the following damage: water infiltration on the main level; water infiltration in the living room, dining room, kitchen and loft kitchen; leakage around the skylight; badly bent chimney cap; and flashing on the roof. (Doc. 10 ¶ 13.) Metro Public Adjusters ("Metro") assessed the storm-related value of the loss at approximately $55,401. (Doc. 10 ¶ 14 (citing Ex. B).)

Defendant hired Crawford & Company ("Crawford") to investigate the loss. (Doc. 10 ¶ 15.) Crawford valued the storm-related loss at approximately $3,392. (Doc. 10 ¶ 16 (citing Ex. C).)

Defendant would not pay the entire loss assessed by Metro because Defendant asserted the damages not covered were "wear-and-tear." (Doc. 10 ¶ 17 (citing Ex. D).) Plaintiffs disagree with this assessment. (Doc. 10 ¶¶ 18, 21.)

Based on these facts, Plaintiffs filed a complaint in this Court on January 18, 2013. (Doc. 1.) Following the filing of the

Motion to Dismiss by Defendants Sentinel Insurance Company Limited and Hartford Financial Services Group, Inc. (Doc. 6) on February 15, 2013, Plaintiffs filed their First Amended Civil Action Complaint (Doc. 10) on March 18, 2013. The First Amended Civil Action Complaint (Doc. 10) became the operative Complaint in this action with the Court's Order of March 26, 2013. (Doc. 11.)

The First Amended Civil Action Complaint (Doc. 10) contains two counts: Count I for Bad Faith; and Count II for Breach of Contract & Covenant of Good Faith and Fair Dealing. With the pending Motion, Defendant seeks dismissal of both counts pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 12.)

Defendant filed the Motion under consideration here (Doc. 12) and supporting brief (Doc. 13) on April 4, 2013. Plaintiffs filed their opposition brief (Doc. 17) on April 22, 2013. Defendant did not file a reply brief but, within the time to do so, Defendant sent the court a letter requesting an oral argument on the Motion (Doc. 19). By Order of April 29, 2013, the Court informed Defendant that any request for oral argument should be presented in the form of a motion. (Doc. 20.) Defendant filed the Motion for Oral Argument of Defendant Sentinel Insurance Company Ltd. (Doc. 21) and supporting brief (Doc. 22) on May 6, 2013. Plaintiffs filed a responsive brief on May 8, 2013. Defendant did not file a reply brief. As noted above, the Court denied the Motion for Oral Argument of Defendant Sentinel Insurance Company Ltd. (Doc. 21) by

3

Order of June 5, 2013. (Doc. 24.)

## **II. Discussion**

***A. Motion to Dismiss Standard***

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claims showing that the pleader is entitled to relief." The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007). *Twombly* confirmed that more is required than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual allegations must be enough to raise a

4

right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

*McTernan,* 577 F.3d at 530. *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*McTernan* discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal

5

> elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips* [*v. Co. of Alleghany*], 515 F.3d [224,] 234-35 [(3d Cir.2008 )]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State*

6

*Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### B. Defendant's Motion

As noted above, with this Motion Defendant seeks dismissal of all claims contained in Plaintiffs' First Amended Civil Action Complaint. (Doc. 10.) We conclude the Motion is properly granted as to Count I for Bad Faith and properly denied as to Count II for Breach of Contract & Covenant of Good Faith and Fair Dealing.

### 1. Bad Faith

Defendant asserts that Plaintiffs' conslusory allegations of bad faith do not establish a plausible claim of bad faith. (Doc. 13 at 6.) We agree.

An action for bad faith in Pennsylvania is governed by 42 Pa. C.S. § 8371 which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.

The statute does not define what constitutes bad faith but Pennsylvania courts, the Third Circuit Court of Appeals, and

7

decisions from district courts within the Third Circuit provide ample guidance. "The term 'bad faith' under section 8371 concerns 'the duty of good faith and fair dealing in the parties' contract and the manner in which an insurer discharged . . . its obligation to pay of a loss in the first party claim context.'" *Berg v. Nationwide Mut. Ins. Co., Inc.*, No. 12 MDA 2008, ---A.3d---, 2012 WL 1313055, at *9 (Pa. Super. April 17, 2012) (quoting *Toy v. Metrolpolitan Life Ins. Co.*, 928 A.2d 186, 199 (Pa. 2007)) (alteration in original). A recent opinion from the Court of Appeals for the Third Circuit set out the relevant legal framework:

> "Bad faith" under Pennsylvania's bad faith statute--42 Pa. Const. Stat. § 8371, which provides a remedy in an action under an insurance policy--is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). A valid cause of action for bad faith requires "clear and convincing evidence . . . that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.* Under the "clear and convincing" standard, "the plaintiff [must] show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or nor the defendants acted in bad faith.'" *Id.* (quoting *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)). Though we have found that bad faith may be found in circumstances other than an insurer's refusal to pay, "[a] reasonable basis is all that is required to defeat a claim of bad faith." *Id.* See also *Frog, Switch & Mfg. Co. V. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999).

8

*Treadways LLC v. Travelers Indem. Co.*, No. 11-2596, 2012 WL 764917, at *2 (3d Cir. Mar. 12, 2012) (not precedential) (alteration in original).

The Pennsylvania Superior Court has observed that "[b]ad faith claims are fact specific and depend on the conduct of the insurer *vis a` vis* the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. 2006) (citing *Williams v. Nationwide Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. 2000)). *In O'Donnell ex. rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. 1999), the Pennsylvania Superior Court discussed the expanding nature of the applicability of the bad faith statute and held that the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith. *O'Donnell*, 734 A.2d at 906-08. Bad faith is not restricted to an insurer's denial of benefits and includes a wide variety of objectionable conduct including lack of good faith investigation and failure to communicate with a client. *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500-01 (Pa. Super. 2004) (listing cases). A claim for bad faith may be based on an alleged violation of the Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.1 *et seq*. *Romano v. Nationwide*, 646 A.2d 1228, 1230 (Pa. Super. 1994). Negligence or bad judgment do not constitute bad faith. *Brown*, 860 A.2d at 501 (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. 1999)). "To support a finding of bad faith, the insurer's conduct must be such as to 'import a

9

dishonest purpose.' In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will." *Id.* (quoting *Adamski*, 738 A.2d at 1036).

Plaintiffs state that their bad faith claim is based on the factual background alleged as well as the following: 1) Defendant's refusal to accept coverage on the claim when it knew or should have known that the claim was covered under the applicable policy; 2) Defendant refusing to fully pay the claim; 3) Defendant denying the claim; 4) Defendant failing to promptly provide a reasonable explanation for the basis of the denial; 5) Defendant's pattern and practice of engaging in conduct benefitting Defendant to the detriment of Plaintiffs; 6) Defendant's placing its interests over those of the insured; and 7) other misconduct which may be discovered during litigation. (Doc. 10 ¶ 25.)

Based on our review of these allegations made in connection with Plaintiff's bad faith claim and the general factual averments set out in their First Amended Civil Action Complaint, Plaintiffs' allegations are not sufficient to show that they have a "plausible claim for relief" as is required to defeat Defendant's Motion. *Iqbal*, 556 U.S. at 678. Here, once we parse out Plaintiffs' conclusory statements, the factual allegations fall far short of the requirement that they must be sufficient "to raise a right to relief above the speculative level on the assumption that all

allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. We find no facts to support a conclusion that the insurer's conduct was "such as to 'import a dishonest purpose.'" *Brown*, 860 A.2d at 501 (quoting *Adamski*, 738 A.2d at 1036).

In their opposition brief, Plaintiffs assert that the dispute over the value of a claim may implicate bad faith. (Doc. 18 at 4.) They point to the difference in their public adjuster's $55,401 estimate of the loss compared with Defendant's adjuster's $3,392 valuation and Defendant's lack of justification or reasonable explanation for the difference. (Doc. 18 at 5.)

While we agree with the premise that valuation disputes *may* implicate bad faith, the support cited by Plaintiffs does not show that this is such a case. Contrary to Plaintiffs' allegation that Defendant did not justify its valuation or provide a reasonable explanation for it, Exhibit D attached to Plaintiff's First Amended Civil Action Complaint establishes the opposite: in a letter to Plaintiffs dated September 12, 2012, Defendant informed them that its valuation of the claim was based on an inspection of the property by an independent adjuster and an engineer, the latter finding that many claimed damages were not caused by the storm. (Doc. 10-4 at 2.) The correspondence identifies the engineer's specific findings related to claimed items and states that, under the terms of the policy, it would only cover damaged items under

11

the claim for wind on the correct date of loss. (*Id.*) Plaintiff may disagree with this explanation, but it cannot be considered "unreasonable."

From this review of Plaintiffs' support for their bad faith claim, we find nothing to suggest wrongdoing on the part of Defendant which could give rise to a claim for bad faith. Plaintiffs present no evidence of "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky*, 649 A.2d at 688. Further, evidence of record properly considered in deciding this motion, including the correspondence discussed above, indicates that allowance to amend this claim would be futile. Therefore, Plaintiffs' claim for bad faith is properly dismissed with prejudice.

**2. Breach of Contract & Covenant of Good Faith and Fair Dealing**

Defendant next argues the Court should dismiss Count II for Breach of Contract & Covenant of Good Faith and Fair Dealing because it appropriately denied the claim and a breach of the duty of good faith and fair dealing is subsumed in a contract claim. (Doc. 13 at 10-12.) We agree in part but conclude Plaintiff's Breach of Contract claim properly goes forward.

First, Plaintiff does not dispute Defendant's assertion that a breach of the covenant of good faith and fair dealing is not an independent action but rather is subsumed in a breach of contract claim. (*See* Doc. 13 at 11; Doc. 18 at 6.) Therefore, we read

12

Count II as one claim for breach of contract.

Under Pennsylvania law, a plaintiff has the burden of showing the following: 1) the existence of a contract including its essential terms; 2) a breach of a duty imposed by the contract; and 3) damages to the plaintiff as a result of the breach. *See*, *e.g.*, *Core-States Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (citation omitted). "[T]he measure of damages applicable in a case of breach of contract is that the aggrieved party should be placed as nearly as possible in the same position he would have occupied had there been no breach." *Harman v. Chambers*, 57 A.2d 842, 521 (Pa. 1948).

Defendant states Plaintiffs' First Amended Civil Action Complaint (Doc. 10) "is devoid of facts to substantiate their argument that Sentinel's denial based on wear and tear exclusion was 'incorrect.'" (Doc. 13 at 10 (citing Doc. 10 ¶ 17).) Defendant adds that the only causes of damage identified in the amended complaint and its attachments are age, deterioration and improper installation. (Doc. 13 at 10.)

We disagree with Defendant's assessment of the record. Plaintiff's valuation of damages is based on the public adjuster's inspection and evaluation of the damage at the subject property. (*See* Doc. 10-2.) On the Metro report, the "Type of Estimate" is identified as "WIND/RAIN." (Doc. 10-2 at 2.) The adjuster stated that the prepared estimate "is based upon our good faith belief as

13

the damages suffered or expenses incurred as a result of the particular loss." (Doc. 10-2 at 2.) Thus, the report can be understood to relate all identified damage/repair estimates to be related to damage from Hurricane Irene in August 2011. Moreover, the report supports a plausible claim that damages suffered at Plaintiffs' residence as a result of the storm were greater than those estimated by Defendant.

Contrary to Defendant's position, at this stage of the proceedings Plaintiffs do not need to present additional evidence directly disputing Defendant's assertion that much of the damage was caused by wear and tear. As this is Defendant's only argument in support of dismissal of Plaintiffs' breach of contract claim (*see* Doc. 13 at 10-11), Defendant has failed to meet its burden of showing Plaintiffs' First Amended Civil Action Complaint does not set out a plausible claim for breach of contract.

### *C. John Doe Defendants*

In addition to Sentinel Insurance Company Limited, Plaintiffs name John Does 1-10 as Defendants in their First Amended Civil Action Complaint. (Doc. 10.) Plaintiffs state

> Defendants, John Does 1-10, is a moniker for
> the individuals and entities currently
> unknown but will be substituted when known,
> as affiliated, associated or liable hereunder
> for the reasons set forth below or inferred
> therefrom. Each of these parties are
> incorporated as Defendants in each and every
> Count and averment listed above and below.

(Doc. 10 ¶ 5.)

14

We conclude the averments contained in Plaintiffs' First Amendment Civil Action Complaint do not provide a basis to arrive at a different conclusion regarding Defendants John Does 1-10. THerefore, our conclusions regarding Defendant Sentinel equally apply to John Doe Defendants.

### III. Conclusion

For the reasons discussed above, the Motion to Dismiss by Defendant Sentinel Insurance Company Ltd. (Doc. 12) is granted in part and denied in part. The Motion is granted insofar as Count I for Bad Faith contained in Plaintiffs' First Amended Civil Action Complaint is dismissed with prejudice. The Motion is denied in that Count II goes forward as a Breach of Contract claim. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: June 7, 2013 _____