## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN AND THERESA CALANDRELLO, | |
| Plaintiffs, | Civil Action No. 3:13-CV-00134 |
| v. | Judge Conaboy |
| SENTINEL INSURANCE COMPANY LIMITED, et al, | Electronically Filed |
| Defendants. | |

## DEFENDANT SENTINEL INSURANCE COMPANY LTD.'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Matthew M. Haar, Esq. (85688)
Saul Ewing LLP
2 N. Second Street, 7th Floor
Harrisburg, PA  17101
717-257-7508 – mhaar@saul.com

Amy L. Piccola, Esq.
SAUL EWING LLP
Centre Square West, 38th Floor
1500 Market Street
Philadelphia, PA 19102
215- 972-8405 – apiccola@saul.com

*Attorneys for Defendant*
*Sentinel Insurance Company Ltd.*

1494709.1

Defendant Sentinel Insurance Company Ltd. ("Sentinel"), by and through its undersigned attorneys, submits this Brief in support of its Motion for Partial Summary Judgment pursuant to Local Rule 56.1 and this Court's Order of April 11, 2013 (Doc. 16).

## I.   **PROCEDURAL HISTORY**

On January 18, 2013, Plaintiffs John and Theresa Calandrello ("Plaintiffs") filed a Complaint (Doc. 1) against Sentinel, The Hartford Company ("Hartford"), and ten "Doe" defendants. The Complaint included claims for (1) bad faith; (2) breach of contract & covenant of good faith and fair dealing; and (3) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

On February 15, 2013, Defendants Sentinel and Hartford filed a joint Motion to Dismiss Plaintiffs' Complaint (Doc. 6) and filed a brief in support of the Motion to Dismiss on March 1, 2013 (Doc. 8). In response to Sentinel and Hartford's Motion to Dismiss, Plaintiffs filed an Amended Complaint (Doc. 10). Plaintiffs' Amended Complaint no longer named Hartford as a defendant. The Amended Complaint abandoned the UTPCPL claim, leaving only the claims for bad faith and breach of contract & covenant of good faith and fair dealing.

Sentinel filed a Motion to Dismiss the Amended Complaint on April 4, 2013 (Doc. 12). This Honorable Court granted Sentinel's Motion to Dismiss in part,

dismissing Plaintiffs' bad faith claim (Docs. 25 & 26).  On July 9, 2013, Plaintiffs

motioned for reconsideration of the Court's Order of dismissal (Doc. 30) and, over

Sentinel's opposition to the Motion (Doc. 31), the Court granted the Motion on

August 28, 2013, permitting Plaintiffs to again amend their complaint (Doc. 32).

On September 11, 2013, Plaintiffs' filed a Second Amended Complaint

(Doc. 36).  The Second Amended Complaint includes claims for (1) bad faith; and

(2) breach of contract and covenant of good faith and fair dealing.  Sentinel filed a

*Motion to Dismiss* Count I of the Second Amended Complaint.  Sentinel has also

filed a *Motion for Partial Summary Judgment* as to Count I of the Second

Amended Complaint and concurrently submits this brief in support of that *Motion*.

## II.    STATEMENT OF FACTS

### A.    The Policy

In August 2011, Sentinel issued homeowners policy of insurance No. 44

RBA956899 to John and Theresa Callandrello (the "Policy") for a residence owned

by the Callandrellos at 392 Sawcreek Estates, Bushkill, Pennsylvania 18324 ("the

Property") (Statement of Facts ("SOF") ¶¶1,7).

1494709.1

The Policy provides coverage for certain "direct physical loss to property"

(SOF ¶2), stating in pertinent part:

### SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling and Coverage B – Other Structures.**
1. We insure against risk of direct physical loss to property described in Coverages **A** and **B**.
2. We do not insure, however, for loss:
    **a.** Excluded under Section I – Exclusions;
    **b.** Involving collapse, except as provided in **E.8.** Collapse under Section I – Property Coverages; or
    **c.** Caused by:

***

    **(6)** Any of the following:
        **(a)** Wear and tear, marring, deterioration;
        **(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

***

### SECTION I – EXCLUSIONS

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** no precluded by any other provision in this policy is covered.

***

3. Faulty, inadequate or defective:
    a. Planning, zoning, development, surveying, siting;
      b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

-4-

    c.  Materials used in repair, construction, renovation, or remodeling; or

    d. Maintenance;

of part or all of any property whether on or off the "Residence premises"

(SOF ¶¶3-4).

## B.  The Alleged Damage and Claim for Insurance Coverage

On or around August 28, 2011, Hurricane Irene passed through Pike County, where the Property is located (SOF ¶9).  On September 7, 2011, the Callandrellos visited the Property and noticed water infiltration in multiple rooms and observed damage to the roof and chimney (SOF ¶10).  The next day, the Callandrellos submitted a claim to Sentinel for the damage to the Property that they alleged was caused by Hurricane Irene (SOF ¶11).

On September 20, 2011, an independent adjuster inspected the Property on Sentinel's behalf (SOF ¶12).  The independent adjuster concluded that only certain interior water damage was covered by the Policy (SOF ¶13).  He estimated that the cost of sealing and priming the damaged interior walls was $705.20 (SOF ¶13). On October 14, 2011, Sentinel issued a $305.20 payment to the Callandrellos for the estimated cost of repairing the covered damage less a $400 deductible (SOF ¶14).  The Callandrellos disputed the independent adjuster's estimate and, on

1494709.1

November 30, 2011, Mrs. Callandrello signed a Letter of Engagement with Metro

Public Adjustment, Inc. ("Metro") (SOF ¶15).

On December 14, 2011, Robert Hulvey, a second independent adjuster,

inspected the Property for Sentinel (SOF ¶16).  On the day of his inspection, Mr.

Hulvey agreed with Larry Meyerhofer, the Callandrellos' public adjuster, that

"there were some additions needed to the original estimate" (SOF ¶17).  After the

inspection, Mr. Hulvey attempted to make contact with Mr. Meyerhofer to discuss

the scope of the claim and adjustments to the estimate, but did not receive a

response until January 5, 2012, when Mr. Meyerhofer informed him that that he

had "not finished [his] estimate" (SOF ¶¶18-19).

On January 25, 2012, the Callandrellos signed their contract with Metro for

public adjusting services (SOF ¶20).  The next day, Mr. Meyerhofer finally

contacted Mr. Hulvey, indicating a willingness to agree on a scope of repairs and

to schedule a re-inspection (SOF ¶21).  On February 20, 2012, Mr. Hulvey again

inspected the Property with Mr. Meyerhofer (SOF ¶22).  After the inspection, Mr.

Hulvey prepared an updated estimate (SOF ¶22) that included the cost of

replacement of some insulation and drywall and an affected outlet and recessed

light, in addition to the previously estimated costs of sealing and painting the walls

(SOF ¶23).  Mr. Hulvey estimated that the cost of repairs was $3,891.50 (SOF

¶23).

On February 21, 2012, Sentinel issued a $2,422.93 payment to the Callandrellos (SOF ¶24).   This payment accounted for Mr. Hulvey's updated estimated cost of repairs less depreciation, the amount of the previous insurance payment, and the deductible (SOF ¶24).   The next day, Mr. Meyerhofer submitted his first report, estimating that the cost of repairs was $55,901.14 (SOF ¶25).   On March 21, 2012, after a Sentinel adjuster informed Mrs. Callandrello that the initial estimate from Metro included incorrect measurements, Mr. Meyerhofer revised his report (SOF ¶26).   Mr. Meyerhofer now estimated that the cost of repairs was $21,469.07 (SOF ¶26).

Given the continued discrepancy between the public adjuster's and the independent adjuster's estimates, which largely turned on issues with the roof, Sentinel requested access to the Property in order to have an engineer inspect the roof (SOF ¶27).   The independent adjuster was unable to set-up a re-inspection between March 2012 and July 2012 because the Callandrellos were not responsive to communications (SOF ¶28).   The Callandrellos and their public adjuster eventually permitted an engineer to inspect the Property on August 20, 2012 (SOF ¶30).   Mr. Meyerhofer confirmed that this delay in resolving the claim was partially due to trouble scheduling appointments at the Property for inspections (SOF ¶29).

1494709.1

An inspection of the roof by the engineer detailed "widespread, severe granule loss", or balding (SOF ¶31).  "[W]idespread and uniform" granule loss, like that on the roof of the Property, "signals the end of the shingles' useful service life. . . primarily due to age-related deterioration" and is not the product of a storm event (SOF ¶32).  The shingles were further damaged by "inadequate ventilation" resulting from the vaulted ceiling design of the Property (SOF ¶33).  A deep gouge through three levels of shingles (SOF ¶34), consistent with mechanical damage caused during installation or maintenance, is also present on the roof (SOF ¶34). In sum, the damage to the shingles and roof was not the result of Hurricane Irene, but rather was caused by age, deterioration, improper design and installation defects (SOF ¶35).

The engineer agreed with the independent adjuster's assessment that most of the interior water damage was caused by "heavy, wind-drive rain" during Hurricane Irene (SOF ¶38).  Part of the interior water damage was not, however, the result of wind-driven rain, but rather resulted from a failure to maintain and replace caulking around the exterior of windows (SOF ¶36).  Specifically, water stains around the skylights in the living room ceiling were the result of persistent leakage, not a single event as evidenced by the dark coloration of the staining, coupled with "the deteriorated caulk applications atop the glazing on the living room skylights" (SOF ¶37).

Based on the independent adjuster's and engineer's reports, Sentinel denied coverage for the water damage around the skylights (SOF ¶39) and for the roof (SOF ¶40).

A careful examination of the facts reveals that Plaintiffs do not have a viable claim for bad faith. Rather this is a coverage dispute over $17,577.57, which is the difference between Plaintiffs' adjuster's final estimate of $21,469.07, and Sentinel's final estimate of $3,891.50 (which has already been paid, less Plaintiffs' deductible).

## III.  QUESTION PRESENTED

    1. Is Sentinel entitled to summary judgment with respect to Plaintiffs' claim for bad faith (Count I)?

    **Suggested Answer: Yes.**

## IV.  ARGUMENT

### A.  Standard of Review

Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court does not weigh the evidence and determine the truth of the matter in determining whether to enter summary judgment.  Rather, a court determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). For an issue

to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. *Id.* at 248.

The moving party has the initial burden of identifying the evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). The moving party can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex,* 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there

must be enough evidence to enable a fact-finder to reasonably find for the non-movant. *Anderson,* 477 U.S. at 249–50.

**B.    Plaintiffs Have Nothing Approaching *Clear and Convincing Evidence* of Bad Faith.**

In Count I of the Second Amended Complaint, Plaintiffs allege that Sentinel acted in bad faith in its adjustment of Plaintiffs' claim under the Policy.  The bad faith claim fails as a matter of law.  To prove a claim of bad faith, Plaintiff must demonstrate by ***clear and convincing evidence***[1] "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." *Brickman Group, Ltd. v. CGU Ins. Co.,* 865 A.2d 918, 930 (Pa. Super. Ct. 2004) (quoting *Booze v. Allstate Ins. Co.,* 750 A.2d 877, 880 (Pa. Super. Ct. 2000)).  "[M]ere negligence or bad judgment is not bad faith.  To support a finding of bad faith, the insurer's conduct must be such as to 'import a dishonest purpose.'  In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will.  Bad faith must be shown by clear and convincing evidence." *Brown v.*

---

[1] The "'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.  Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 367 (3d Cir. 2004) (internal quotations and citations omitted).

*Progressive Ins. Co.*, 860 A.2d 493, 500-01 (Pa. Super. 2004) (internal citations omitted).

In their Second Amended Complaint, Plaintiffs purport to provide examples of Sentinel's bad faith relating to either an alleged (1) unreasonable denial of the claim; or (2) delay in resolution of the claim. See Second Am. Cmplt., ¶¶ 26, 29, 33.[2] The evidentiary record has not borne these out. The undisputed evidence shows that Sentinel both reasonably investigated and denied Plaintiffs' claim. At a minimum, while there may be disagreement, no reasonable juror could find that Sentinel acted in bad faith when it inspected the Property multiple times, continued attempts to communicate with Plaintiffs despite a lack of response, and paid the portion of the claim covered by the Policy.

---

[2] In support of their bad faith claim Plaintiffs offer the bald conclusions that Sentinel: (1) refused to accept coverage for Plaintiffs' claim. . . when it knew or should have known that the claim was covered; (2) refused to fully pay Plaintiffs' claim; (3) delayed denying Plaintiffs' claim; (4) failed to promptly provide a reasonable explanation of the basis for denial; (5) exhibited a practice of benefiting itself to the detriment of Plaintiffs; (6) placed its own interests over the interests of Plaintiffs; (7) nonrenewed the Policy due to the instant matter insurance claim; and (8) engaged in "[a]ny other misconduct which may discovered during the litigation." (Am. Cmplt. ¶ 25) Plaintiffs' failure to plead factual averments substantiating their claim of bad faith alone is grounds for dismissal. *See, e.g. Atiyeh v. National Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 600 (E.D. Pa. 2010) (dismissing complaint alleging similar facts to case at hand for failure to state a claim); *Eley v. State Farm Ins. Co.*, No. 10-cv-5564, 2011 WL 294031, at *4 (E.D. Pa. Jan. 31, 2011) (same).

1.    Sentinel had a reasonable basis to deny Plaintiffs' claim.

Even if Sentinel's policy interpretation in this case was incorrect, there is no evidence that the denial was due to some "dishonest purpose" as required by Pennsylvania law. *Brown*, 860 A.2d at 500-01. To the contrary, Sentinel relied on the observations and conclusions of both its independent adjuster and a roofing expert, and therefore had a reasonable basis for denying the claim – even if the Court found the decision to ultimately be wrong. *See J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (holding that bad faith cannot be found where the insurer's conduct is in accordance with a reasonable, but incorrect, interpretation of insurance policy and law). "A reasonable basis is all that is required to defeat a claim of bad faith." *Id.* (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995)). There is certainly no "clear and convincing" evidence of bad faith here, as a matter of law.

2.    Sentinel completed a prompt and thorough investigation of Plaintiffs' claim.

Plaintiffs suggest, without citation to supporting facts, delay by Sentinel. (Am. Cmplt. ¶33.) This is particularly ironic given Plaintiffs' own delay in responding to both Sentinel and its own public adjuster.   In any event, while delay can be a relevant factor in determining whether bad faith has occurred, "a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588-89

-13-

(E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (Table).  In determining

whether a delay supports a claim of bad faith, Pennsylvania courts have looked to

the degree to which a defendant insurer *knew* that it had no basis to deny the

claimant; if delay is attributable to the need to investigate further or even to simple

negligence, no bad faith has occurred.  *Id.* (citing *Klinger v. State Farm Mut. Auto.*

*Ins. Co.,* 115 F.3d 230, 234 (3d Cir. 1997)).

        The undisputed facts of this case establish that Sentinel did not unreasonably

delay either the investigation or partial attempted settlement of Plaintiffs' claim.

Sentinel's independent adjuster promptly visited the Property after Sentinel's

receipt of the claim.  Sentinel then continued to remain in contact with Plaintiffs'

public adjuster to reschedule necessary re-inspections and an inspection by an

engineer.  All delays in resolution of the claim were first a product of the public

adjuster's refusal to communicate with Sentinel's independent adjuster and then

the result of Plaintiffs' failure to schedule inspections.  (SOF ¶¶18-21, 27-30; *see*

*also Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000)

(citing *Klinger*, 115 F.3d at 234) (holding that "if delay is attributable to the need

to investigate further or even to simple negligence, no bad faith has occurred."),

*aff'd*, 261 F.3d 495 (3d Cir. 2001) (Table)).

In light of the fact that Plaintiffs and their public adjuster contributed to, if not caused, any delays in resolution of the claim, Sentinel cannot be found to have acted in bad faith.

## V.    **CONCLUSION**

Defendant Sentinel Insurance Company Ltd. respectfully requests that the Court grant summary judgment as to Count I of the Second Amended Complaint with prejudice.

Respectfully submitted,

Dated:  September 26, 2013

/s/ Matthew M. Haar
Matthew M. Haar, Esq. (85688)
Saul Ewing LLP
2 N. Second Street, 7th Floor
Harrisburg, PA  17101
717-257-7508 – mhaar@saul.com

Amy L. Piccola, Esq.
SAUL EWING LLP
Centre Square West, 38th Floor
1500 Market Street
Philadelphia, PA 19102
215- 972-8405 – apiccola@saul.com

*Attorneys for Defendant*
*Sentinel Insurance Company Ltd.*

1494709.1

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2013, I served a true and correct copy

of the foregoing *Brief in Support of Motion for Partial Summary Judgment* by ECF

filing upon the following counsel of record:

> Matthew B. Weisberg, Esq.
> Graham Baird, Esq.
> Weisberg Law, PC
> 7 South Morton Avenue
> Morton, PA 19070
> *Attorneys for Plaintiffs*

Dated:  September 26, 2013                  /s/ Matthew M. Haar
                                           Matthew M. Haar